THE HUDSON TUNNEL COMPANY, appellants, and the ATTORNEY-GENERAL, ex rel. The Board of Riparian Commissioners, respondents.

1. Lands under water, granted by the state to a corporation under the eighth section of the riparian act, are not lands belonging to the state within the meaning of the thirty-sixth section of the general railroad act, although, in such grant, a rent, payable to the state, is reserved, and in the instrument of grant, power to re-enter for non-payment of rent is reserved. Such lands may be condemned, and applied to other public uses, by proceedings to condemn against the corporation grantee.

2. A right to re-enter and re-possess for non-payment of rent, does not create an estate in reversion.

On appeal from an injunction order. The facts of this case appear in the report of the case before the Chancellor, *ante, p.* 176.

*Mr. B. Williamson* and *Mr. Henry S. White,* for appellants.

*Mr. Vanatta,* Attorney-General, for respondents.

The opinion of the court was delivered by
DEPUE, J.

By the decision of this court, in *The State, The Morris and Essex R. R. Co., pros., v. The Hudson Tunnel Co.,* 9 *Vroom* 548,. the legality of the organization of. the tunnel company, and its power to condemn the title of the railroad company

to such of the lands in controversy as lie between the original line of high water and the exterior line of solid filling established by the Board of Riparian Commissioners, for the purpose of constructing a tunnel, were conclusively settled. The principle of that decision is applicable to the lands of the Jersey Shore Improvement Company, similarly situated.

This information charges that the tunnel proposed to be constructed, has been located from a point in Fifteenth street, in Jersey City, westerly of the original line of high water, across Hudson river, into the city of New York, and that it is contemplated to construct said tunnel between said points, under the surface of the land and under the waters of said river. It also charges that it is the purpose and intent of the tunnel company, on the conclusion of the proceedings for condemnation against the Morris and Essex Railroad Company and the Jersey Shore Improvement Company, to tender to said corporations the sums awarded as compensation for the lands required, and then to enter immediately into possession of said lands, and engage in and prosecute the construction of the said tunnel on, in, and through the said land of the state, from the original high-water mark in Jersey City, to the middle of the Hudson river.

The information further charges that neither the Board of Riparian Commissioners nor the Morris and Essex Railroad Company nor the Jersey Shore Improvement Company, has given consent to the construction of said tunnel.

The relief prayed for is that the tunnel company " be perpetually enjoined from possessing, entering upon, going, or being upon the said lands of the State of New Jersey, or any part of them, for the purpose of making said tunnel on or in said land, and from doing any work or act in or on said land for or towards making said tunnel, or any part thereof, and from condemning said land, or any part of it, and from doing any act or thing against any person or corporation whatsoever, in, or about, or towards, or for the purpose of condemning said land or any part thereof."

A preliminary injunction was granted, as comprehensive as the prayer of the information, to continue until the defendants should file an answer.

A motion was made to dissolve or modify the injunction, for want of equity in the information, and the injunction was modified so far as to permit the defendants to proceed to condemn the said lands leased to the Morris and Essex Railroad Company and the Jersey Shore Improvement Company, as against the lessees and their assigns, but it was directed that "otherwise the said injunction should stand for the protection of the rights of the state." From this order, the tunnel company has taken this appeal.

Of the lands described in the information, that part which lies between the original line of high water and the exterior line of piers established by the commissioners under the riparian act, is held by the Morris and Essex Railroad Company and the Jersey Shore Improvement Company, under leases granted by the riparian commissioners, by virtue of the act of March 31st, 1869. *Acts of* 1869, *p.* 1017. The proceedings for condemnation to which these two corporations were made parties, relate to that part of the premises.

The injunction, as modified, applies as well to the lands within the exterior line held by the railroad and improvement companies, as to lands outside of that line, the property in which is in the state. The modification of the injunction conferred upon the appellants the barren privilege of prosecuting the proceedings of condemnation. The interdict on the occupation of the lands, and their use in the construction of a tunnel after the condemnation should be concluded, was continued. This was done on the idea that the state retains in lands granted under the riparian act, an estate such as prohibited their condemnation under the provisions of the general railroad act.

The tunnel company was authorized under the general railroad act of 1873. *Acts of* 1873, *p.* 88. By the thirty-sixth section of that act, it was provided that the corporation formed under that act should not take any lands under water

belonging to this state, until the consent of the riparian commissioners should first be had and obtained, and, further, that no corporation organized under the act should be authorized to take, use, or occupy, by condemnation, any lands belonging to the State of New Jersey.

The only question necessary to be considered at present is, whether these provisions are operative on lands in private ownership, held under grants from the state. In other words, whether lands which have been granted by the state, under the riparian act, are lands belonging to the state within the meaning of the general railroad act.

The eighth section of the riparian act of 1869, enacts " that if any person or persons, corporation or corporations, or associations, shall desire to obtain a grant for lands under water, which have not been improved, and are not authorized to be improved under any grant or license protected by the provisions of this act, it shall be lawful for any two of the said commissioners concurring, together with the Governor and Attorney-General of the state, upon application to them, to designate what lands under water, for which a grant is desired, lie within the exterior lines, and to fix such a price, reasonable compensation, or annual rentals, for so much of said lands as lie below high-water mark as are to be included in the grant or lease for which such application shall be made, and to certify the boundaries and the price, compensation, or annual rentals to be paid for the same, under their hands, which shall be filed in the office of the Secretary of State ; and upon the payment of such price or compensation or annual rentals, or securing the same to be paid, to the treasurer of this state, by such applicant, it shall be lawful for such applicant to apply to the commissioners for a conveyance, assuring to the grantee, his or her heirs and assigns, if to an individual, or to its successors and assigns, if to a corporation, the land under water so described in said certificate ; and the said commissioners shall, in the name of the state, and under the great seal of the state, grant the said lands in manner last aforesaid, and said conveyance shall be subscribed by the Gov-

ernor and attested by the Attorney-General and Secretary of State, and shall be prepared under the direction of the Attorney-General, to whom the grantee shall pay the expenses of such preparation; and upon the delivery of such conveyance, the grantee may reclaim, improve and appropriate to his and their own use, the lands contained and described in the said certificate, subject, however, to the regulations and provisions of the first and second sections of this act; and such lands shall thereupon vest in said applicant."

The information alleges that the two corporations named, have leases for the lands lying between the original line of high water and the line fixed by the commissioners for the exterior line of piers, for certain yearly rents reserved. It states that such leases are upon express condition "that if it should happen that the yearly rent reserved in and by the said lease should, at any time thereafter, be behind and unpaid for the space of sixty days next after the same should become due, it should be lawful, without demand for said rent, for the state, by its officers or agents, to enter said demised premises, not only to distrain and to make distress for the arrears of rent, but to re-enter into said demised premises, and the same, and every part thereof, to have, possess and enjoy."

It further alleges that the state has, in the lands so demised, an annual rent issuing thereout, and a reversion therein; and "that said tunnel, when constructed, and during the course of its construction, will be a purpresture and a nuisance in the said lands of the state of New Jersey, and will impair the value of said lands, and will endanger and diminish the revenues of this state from said lands."

The grantees are corporations possessed of the attribute of perpetual existence. The language of the grant is such as is appropriate in a conveyance to a corporation to create a fee. It is not alleged in the information that the donation of the estate is limited in express terms. By force of such a grant, whether made by an individual or by the state, every particle of the estate of the grantor is transmitted to the grantee. No

residue of the estate in the lands, such as is essential to an estate in reversion, remains in the grantor.

The use for which the lands were conveyed, is unqualified. The grantees might appropriate them to use in the construction of a tunnel, or convey them to another corporation having the capacity to execute such a work, without violating the terms of the grant, or putting the lands to a use inconsistent with the purposes for which they were granted.

The interest which the state has in the premises is not an actual estate. It consists merely in a charge to secure the payment of the rent reserved, by distress and re-entry and taking possession. On a grant of the whole estate in fee simple, reserving a certain rent, with a clause for distress and re-entry for non-payment of the rent, the owner of the rent has neither seigniory nor reversion. 2 *Stephens' Comm.* 25; *Litt.*, §§ 217, 218. A right of entry is not a reversion or estate in the land. *Nichol* v. *N. Y. & E. R. Co.*, 2 *Kernan* 121. Nor is a mere possibility of reverter for condition broken, which may or may not happen, an estate in reversion. 4 *Kent* 354; 2 *Washb. on Real Prop.* 390.

It is manifest that lands in which the state has no rights other than those specified, are not lands belonging to the state within the meaning of that section of the general railroad act which limits the power of corporations created under that statute, to condemn lands for the uses contemplated by the act.

Nor can the injunction be retained in its present form, on the ground that the appropriation of the lands of the two corporations to the proposed use will diminish the revenues of the state.

It was not argued in behalf of the respondents, that the consummation of the proceedings for condemnation will discharge the lessees from the payment of rent, or cause an apportionment of the rent reserved. Nor is it charged in the information that the proposed use of the premises by the appellants will impair the value of the lands as security for

the rent, or hazard the ability of the state to collect it of its lessees.

The injunction should be dissolved entirely so far as regards that portion of the lands which is held by the Morris and Essex Railroad Company and the Jersey Shore Improvement Company.

It was further contended by the appellants that the injunction should also be dissolved with respect to the lands of the state under water beyond the exterior line, for the reason that it did not appear that the appellants intended to enter upon such lands without first obtaining the consent of the riparian commissioners.

Inasmuch as the injunction was merely temporary, to continue until answer filed, and its continuance, with respect to the lands beyond the exterior line, will not interfere with the present operations of the company, no injury can result from retaining the injunction, so far as such lands are concerned. Relief, on the ground that the appellants do not purpose to enter upon such lands, may, if necessary, be obtained in the Court of Chancery.

To the extent above indicated, the order appealed from should be reversed.

For reversal—BEASLEY, C. J., DALRIMPLE, DEPUE, DIXON, GREEN, VAN SYCKEL, WALES, WOODHULL. 8.

For affirmance—KNAPP, SCUDDER. 2.